IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PERFORMANCE FOOD GROUP COMPANY,

                        Plaintiff,

        v.                                  Civil Action Number 3:05CV447

JAVA TRADING COMPANY,

                        Defendant.

**MEMORANDUM OPINION**

      THIS MATTER comes before the Court on Defendant Java Trading Company's ("Java") Motion to Dismiss Plaintiff Performance Food Group Company's ("PFG") Complaint, or to Compel Arbitration. The dispute arises out of a written contract ("Supply Agreement") between PFG and Java. The Supply Agreement contains a dispute resolution clause subjecting any dispute related to the Supply Agreement to mediation or arbitration. Upon due consideration, the Motion to Dismiss is GRANTED.

**Statement of Facts**

      On or about June 23, 2002, PFG issued a Request for Proposal to potential partners to design and coordinate a complete hot beverage private label program for PFG's subsidiaries. (Compl. ¶ 3). On or about July 23, 2002, Java responded to the Request for Proposal by listing services which included: providing at least five (5) hot beverage specialists as well as a marketing person and sale

service manager. Java's proposal included the promise to provide more hot beverage specialists as needed to meet an expected demand of 1,000,000 pounds of coffee per year in the first year. (Compl. ¶ 4).

On December 19, 2002, PFG and Java entered into the Supply Agreement. Under the terms of the Agreement, PFG retained Defendant Java to design, provide, and coordinate a complete hot beverage private label program for its operating companies. (Supply Agreement p.1). In conjunction with the Supply Agreement, the parties entered into a Rental Program Agreement, an Equipment Rental Agreement, and an Equipment Maintenance Agreement. (Compl. ¶ 16).

Plaintiff claims it performed all of its obligations under the Private Label Supply Agreement, the Rental Program Agreement, Equipment Rental Agreement, and Equipment Maintenance Agreement. (Compl. ¶ 30). In contrast, PFG asserts Java breached the contracts by its non-performance, specifically by failing to meet the standard of care for services required. Finally, PFG claims Java breached its contract by placing equipment in establishments, which it knew, or should have known could not support the equipment through the purchase of hot beverage products. It also claims Java fraudulently induced it into entering the Supply Agreement. PFG claims that their fraud in the inducement claim would not be covered by any contractual agreement to arbitrate disputes.

Defendant seeks to enforce the Agreement's dispute resolution clause, contending PFG's noncompliance with the clause warrants a dismissal for failure to state a claim upon which relief can be granted. In the alternative, Java asks this Court to stay the judicial proceedings and compel the parties to arbitrate. Their principal arguments are: the Supply Agreement is a fully integrated contract agreement which contains a detailed multi-step dispute resolution agreement. Java asserts that PFG's compliance with the dispute resolution provision, is a mandatory condition precedent to

any court action. Java submits that a 12(b)(6) motion is the proper remedy for PFG's failure to comply with the parties' dispute resolution clause. Alternatively, Java asserts that PFG should be compelled to comply with the dispute resolution clause between the parties in Paragraph 17.6 of the Supply Agreement.

**Analysis**

I. <u>The Supply Agreement contains a mandatory resolution provision that is a condition precedent to litigation</u>.

This Court looks to the language of the contract to determine the intent of the parties should a dispute arise. Applying principles of Virginia substantive law, a contract is not deemed ambiguous merely because the parties disagree as to the meaning of the language they used to express their agreement, but must be construed as written. <u>Wilson v. Holyfield</u>, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (noting that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein); <u>Meade v. Wallen</u>, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984) ("courts are bound to say that the parties intended what the written instrument plainly declares").

The Court must first "determine whether a binding arbitration agreement exists between the parties to this suit. Second, the court must determine whether the dispute falls within the parameters of the arbitration agreement." <u>Gibbs v. PFS Investments Inc.</u>, 209 F. Supp. 2d 620, 625 (E.D. Va. 2002); <u>see also</u> <u>Hightower v. GMRI, Inc.</u>, 272 F.3d 239, 242 (4th Cir. 2001). "If the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it

3

then must refer the matter to arbitration without considering the merits of the dispute." Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997).

Looking to the language of the Agreement, either PFG or Java may terminate the Supply Agreement, if the other party is in default. (Supply Agreement ¶ 17.6) The Agreement directs the parties to proceed pursuant to paragraph 17.6 should a dispute arise. In dispute is the following provision from the Supply Argument, under a section entitled "Other Issues":

> In the event of any dispute arising under or related to this Agreement or any aspect of this Agreement, then the parties shall proceed under the procedures set forth in this Paragraph. The parties shall first attempt to resolve the dispute between them without resort to any legal process. If the parties cannot resolve the dispute between them, they shall conduct a non-binding mediation. The parties shall conduct the mediation in good faith. If the mediation is unsuccessful, then either party may elect to file for any other legal remedies available by law. The substantially prevailing party in an arbitration shall be entitled to recover its reasonable attorneys' fees, costs and expert fees. *In no event may any party file an action with any court prior to filing a demand for arbitration.* Any arbitration award may be filed with the Superior Court of the State of Washington for King County, and enforced through court processes.

Supply Agreement ¶ 17.6. (emphasis added). Java encourages this Court to interpret the Agreement as showing compliance with the Agreement's dispute resolution as mandatory. The paragraph first states the parties will attempt to resolve the dispute without turning to the legal process. Second, the parties, will engage in non-binding mediation. Finally, the language of the contract explicitly states that arbitration is mandatory.

The Supply Agreement also provides that Virginia law will generally apply to the Supply Agreement. ¶ 17.5. As the Virginia Supreme Court has stated, "the word 'shall' is primarily mandatory in its effect and the word 'may' is primarily permissive. Ross v. Craw, 231 Va. 206, 212, 343 S.E. 2d 312, 316 (1986) (citing Pettus v. Hendricks, 113 Va. 326, 330, 74 S.E. 191, 193 (1912)).

In <u>Pettus</u>, the Virginia Supreme Court stated that "courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe 'may' and 'shall' as permissive or mandatory in accordance with the subject matter and context." <u>Pettus</u>, 113 at 330. The use of the word "shall" throughout the paragraph should be read as mandating the steps each party must follow. After providing for steps the parties must take, the contract reads: "In no event may any party file any action with any court *prior* to filing a demand for arbitration." This sentence explicitly requires that filing for arbitration is a mandatory condition precedent to any court action regarding the Supply Agreement.

While the Supply Agreement does contain several internal contradictions, broadly construed, the Agreement mandates arbitration by the parties. In addition to applying general principles of Virginia contract law, which mandates arbitration by the parties in this instance, this Court is guided by federal policy which actively supports private dispute resolution as an alternative to traditional judicial resolution. The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") provides a broad statement of congressional intent to uphold the dispute resolution clauses in contracts. <u>Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.</u>, 867 F.2d 809, 813 (4th Cir. 1996). The presumption in favor of arbitration acquires particular significance when the arbitration clause is broadly worded. <u>Shearson Lehman Hutton, Inc. v. Wagner</u>, 944 F.2d 114, 121 (2d Cir. 1991) (stating that, in cases of broadly worded arbitration clauses, the "strong presumption in favor of arbitrability applies with even greater force") .

II. <u>PFG's fraud in the inducement claims fall within the parameters of the Supply Agreement's resolution clause</u>.

Despite its assertions, PFG's claims of fraudulent inducement arise under the parties' Supply Agreement and are arbitrable. PFG claims that it was fraudulently induced to enter into the Supply Agreement and should not be bound by the dispute resolution terms. If the resolution agreement mandates arbitration, this Court "cannot consider claims of fraud in the inducement of the contract generally." <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 404 (1967). The fraudulent inducement as well as PFG's breach of contract claims are the responsibility of a mediator or arbitrator. <u>Id.</u>; <u>See also</u> <u>Jeske v. Brooks</u>, 875 F.2d 71, 75 (4th Cir. 1989) (holding that allegations of fraud relate to the entire contract and are arbitrable); <u>Mar-Len of Louisiana, Inc. v. Parsons-Gibane</u>, 773 F.2d 633, 636 (5th Cir. 1985) (holding that consistent with federal policy favoring arbitration, an allegation of fraud in the inducement of a contractual relationship was within the scope of an arbitration clause). In contrast, had PFG asserted fraudulent inducement of the dispute resolution clause itself, this Court would be able to resolve it. This is not the case here. PFG's claims of fraudulent inducement of the Supply Agreement are subject to the parties' dispute resolution agreement.

**Conclusion**

Dismissal of the case is proper when all issues presented are subject to a dispute resolution clause. See Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); see also Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (citing cases which support dismissal when all of the issues raised in the district court must be submitted to arbitration). Accordingly, Defendant's Motion to Dismiss is hereby GRANTED.

An appropriate Order shall issue.

                          /s/   JAMES R. SPENCER
                          UNITED STATES DISTRICT JUDGE

ENTERED this   4th   day of OCTOBER, 2005